# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| FOREIGN CANDY COMPANY, INC., | |
| Plaintiff, | **No. 12-CV-4107-DEO** |
| vs. | **ORDER ON DEFENDANT'S MOTION** |
| PROMOTION IN MOTION, INC., | **TO DISMISS** |
| Defendant. | |

Presently before the Court is Defendant, Promotion In Motion, Inc.'s [hereinafter the Defendant], Motion to Dismiss. Docket No. 9. The parties appeared telephonically for hearing on March 26, 2013. After listening to the parties' arguments, the Court took the matters under consideration and now enters the following.

## I. BACKGROUND

At this early stage of the case, few facts are before the Court. However, the following background is relevant to the present Motion to Dismiss:

This case involves two, competing candy companies. The Plaintiff, Foreign Candy Company, Inc. [hereinafter the Plaintiff], a corporation headquartered in this district, "is engaged in the business of importing, distributing, and

selling candy products throughout the United States..."
Docket No. 14, p. 2. It "is a leader and an innovator in the
candy industry. By virtue of the significant investment that
[the Plaintiff] makes in branding its products, [the
Plaintiff] has gained significant recognition in the minds of
consumers throughout the United States and abroad as a source
of quality candy products." Id. Similarly, the Defendant is
a "leading candy manufacturer and marketer located in New
Jersey." Docket No. 9, Att. #1, p. 1.

In its capacity as a candy marketer, the Defendant owns
the rights to (what it says is a popular) sour watermelon
candy, known as Sour Jacks. [Hereinafter the Defendant's
watermelon candy will be referred to as SJC.] From the
parties filings, it is unclear how long SJC has been on the
market, although it seems undisputed that SJC predated any
watermelon candy made by the Plaintiff.

Around September 2012, the Plaintiff introduced a sour
watermelon candy into the local and national marketplace,
called Upnext Gummies. [Hereinafter the Plaintiff's
watermelon candy will be referred to as the UNG.] According
to the Plaintiff, it invested significant time and resources

in brining UNG to the market. As is demonstrated by the exhibits, there is, at the least, some superficial similarity between SJC and UNG.

Sometime in 2012, the Defendant became aware of UNG's existence. The Defendant responded to the existence of UNG by sending a cease and desist letter to the Plaintiff at its headquarters, located in this district, on November 12, 2012. See Docket No. 14, Ex. A. In short, the letter set out the Defendant's history with SJC, stated that the Defendant believes that UNG unfairly infringes SJC's trademark, and concluded that the Defendant may be entitled to legal recourse if the Plaintiff went forward with UNG.

Shortly there after, on November 28, 2012, the Plaintiff filed the present suit in this Court. See Docket No. 1. In its Complaint, the Plaintiff "sees a Declaratory Judgment of non-infringement and other equitable relief and compensatory damages arising from Defendant's conduct." Docket No. 1, p. 1.

As will be discussed in greater detail below, the current fighting issue is whether this Court has personal jurisdiction

over the Defendant.  Pursuant to that dispute, the following

facts are relevant:

It seems that both the Plaintiff and the Defendant have

sold some of their products in the other's home state.

However, while the Defendant's SJC has been sold in Iowa, this

case arose before the Plaintiff had the opportunity to sell

UNG in New Jersey.[1]  Additional facts and allegations will be

discussed below.

## II.  ISSUES

The Defendant's Motion to Dismiss raises two primary

issues.  The first is that this Court lacks personal

jurisdiction over the Defendant.  Specifically, the Defendant

argues the Court does not have specific personal jurisdiction

because none of the events giving rise to the Complaint

---

[1]      According to its brief, less than 1% of the
Defendant's business is done in Iowa.  Docket No. 9, p. 9.
The Plaintiff argues that the 1% of business that the
Defendant does in Iowa actually shows that when compared with
population, the Defendant does as much business in Iowa as it
does anywhere in the U.S. because Iowa's population is  also
slightly less than 1% of the total U.S. population.  Docket
No. 14, p. 3-4.  Additionally, the Defendant admits that it
has a  single employee stationed in Iowa.  Docket No. 9, p. 9.
The Defendant asserts that the employee is a national sales
director.  However, the Plaintiff states that the Defendant's
Iowa based employee lives and works out of Sioux City, and
calls on Iowa based convenience type stores.

occurred in Iowa, and the Court does not have general personal jurisdiction because it did not have continuous and systematic contacts with this jurisdiction.

Second, the Defendant argues that the case should be dismissed, because the Plaintiff's Complaint is an anticipatory declaratory judgment action, filed for the express purpose of depriving the Defendant of its choice, home, forum. Specifically, the Defendant argues that the Plaintiff filed this case shortly after receiving a cease and desist letter from the Defendant that alerted the Plaintiff to the impending litigation.

The court will consider each of these issues in turn.

## III. STANDARD

An action may be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[2] The party asserting jurisdiction has the burden to make a prima facia showing that jurisdiction is proper. Viasystems, Inc. v. EBM-Papst St. Georgen GMBH & Co., KG, 646

---

[2] "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion... lack of personal jurisdiction..." Fed. R. Civ. P. 12(b).

F.3d 589 (8th Cir. 2011). A court considering whether jurisdiction is proper must view the evidence then available in a light most favorable to the party asserting jurisdiction and resolve all factual conflicts in favor of that party. Goss Graphic Systems, Inc. v. Man Roland Druckmaschinen Aktiengesellschaft, 139 F. Supp. 2d 1040 (N.D. Iowa 2001) (citing Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F. 2d 1384, 1387 (8th Cir. 1991)).

## IV. ANALYSIS

### A. Personal Jurisdiction

The Defendant first argues that this Court has neither general nor specific personal jurisdiction over the Plaintiff's claim. The Supreme Court has recognized the existence of two types of jurisdiction: specific and general. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). Specific jurisdiction refers to the exercise of "personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." Id. at 414, fn. 8. General jurisdiction occurs when, though the suit does not arise out of a defendant's contacts with the forum, the defendant's independent contacts with the

forum are so "continuous and systematic" that the exercise of jurisdiction remains justified. Id. at 415 (citations omitted). Thus, the distinction between specific and general jurisdiction is a recognition that fairness requires more or less contacts with a forum depending on whether the conduct of the defendant at issue is part of the purported basis for jurisdiction.

The first question a court must take up when considering jurisdiction is the extent of the forum State's long-arm statute. In order for a court to exercise jurisdiction, the forum State's long-arm statute must provide sufficient grounds. See Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004). If jurisdiction is proper under the forum state's long-arm statute, the exercise of jurisdiction must still comport with a defendant's constitutional due process rights. Id.

Iowa Rule of Civil Procedure 1.306 provides for personal jurisdiction over a defendant to the full extent of the Constitution. Med-Tec, Inc. v. Kostich, 980 F. Supp. 1315 (N.D. of Iowa 1997). Thus, the question becomes whether forcing the Defendant to defend itself in this Court, located

in the Northern District of Iowa, would violate its constitutional due process rights.

Due process requires that a defendant "have certain minimum contacts with" a forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>International Shoe Co. v. State of Washington</u>, 326 U.S. 310, 316 (1945) (quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)). Minimum contacts are contacts, ties or relations with a forum State such that a defendant "should reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 299 (1980). Traditional notions of fair play and substantial justice refer to the reasonableness of requiring a defendant "to defend a particular suit" in the forum in which it is brought. <u>Id.</u> at 292 (citing 326 U.S. at 292). A determination of whether the exercise of jurisdiction is ultimately reasonable requires a court to consider the defendant's burden of defending in the forum State, as well as:

> the forum State's interest in adjudicating the dispute . . . the plaintiff's interest in obtaining convenient and effective relief . . . the interstate judicial

> system's interest in obtaining the most
> efficient resolution of controversies; and
> the shared interest of the several States
> in furthering fundamental substantive
> social policies . . . .

Id. (internal citations omitted).

In interpreting the due process case law, the Eighth Circuit has identified five factors to be considered when determining whether an exercise of jurisdiction comports with constitutional Due Process:

> (1) the nature and quality of the
> [defendant's] contacts with the forum
> state; (2) the quantity of the
> [defendant's] contacts with the forum
> state; (3) the relation of the cause of
> action to the [defendant's] contacts; (4)
> the interest of the forum state in
> providing a forum for its residents; and
> (5) the convenience of the parties.

Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1390 (8th Cir. 1991) (citing Land-O-Nod Co. v. Bassett Furniture Industries, Inc., 708 F.2d 1338 (8th Cir. 1983)).

The first three factors are the predominant "factors, and the remaining two factors are secondary . . . ." Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010) (citation omitted). A court must look at all of the factors together and "examine

the totality of the circumstances in making a personal-jurisdiction determination." Id.

In this case, the Defendant denies this Court has either general or specific personal jurisdiction. The Court will first consider specific jurisdiction.

In Burger King Corp. v. Rudzewicz, the Supreme Court recognized that the exercise of specific jurisdiction is proper when

> an out-of-state defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities.

471 U.S. 462, 473-74 (1985) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984) and Helicopteros Nacionales de Colombia, 466 U.S. at 414).

Similarly, in Calder v. Jones, the Supreme Court ruled that jurisdiction was proper so long as the defendant engaged in "intentional conduct . . . calculated to cause injury" in the forum State.[3]   465 U.S. 783, 791 (1984).  As pointed out in the Defendant's responsive brief, specific jurisdiction is

--------

[3]   The Eighth Circuit, rather than viewing Calder as announcing independent grounds for a finding of personal jurisdiction, has stated that it merely "requires the consideration of additional factors . . . ."   Dakota Industries, Inc., 946 F.2d at 1391.

rooted in the third factor of the five factor test cited above, regarding the relationship of the parties' contacts to the pending cause of action. See <u>Bell Paper Box, Inc. v. U.S. Kids, Inc.</u>, 22 F.3d at 816 (8th Cir. 1994).

The Defendant has sold its SJC and other candy in Iowa, which establishes some contacts with forum state. Additionally, the Defendant has an employee located in Iowa, and it seems the employee does at least some business in Iowa. The quality of the contacts is more complicated question. The Defendant does less than 1% of its business in Iowa. However, as discussed by the Plaintiff, the business the Defendant does in Iowa is proportional to its business anywhere in the United States, based upon population. Under the Plaintiff's argument, if the amount of business done by the Defendant in Iowa is not sufficient to establish minimum contacts with Iowa, then no state would be a proper forum for the Defendant based upon the proportional business it does there.

That said, this case is not grounded in the sale of candy alone. Rather, it is a declaratory judgment action related to trademark infringement. The Plaintiff wants this Court to declare that UNG does not infringe on SJC. This leads to the

third consideration, the specific jurisdiction consideration, the relation of the contacts in the forum state to the present cause of action. In this case, it seems clear that the Plaintiff became aware of the possibility of a trademark conflict when the Defendant mailed the cease and desist letter to Iowa. The Defendant's letter sought to discourage the Plaintiffs from further developing UNG in Iowa and distributing it anywhere. The Plaintiff hopes that the resolution of this case will allow it to continue to develop UNG in Iowa and distribute it everywhere.

It is true that sending a cease and desist letter into the forum probably would not be a sufficient relationship to establish personal jurisdiction absent other facts. See <u>Med-Tec Inc. v. Kostich</u>, 980 F. Supp. 1315 (N.D. Iowa 1997). However, in this case, the Defendant sent a letter into Iowa, hoping to discourage the development and sale of UNG in Iowa because the Defendant believed that UNG would conflict with its sale of SJC in Iowa (and elsewhere). Based on that action in Iowa, related to ongoing and future Iowa activities, the Plaintiff filed the present suit to protect the development of UNG. Accordingly, the Court finds that there is a significant

relationship between the Defendant's contacts with Iowa and the cause of action currently before the Court. More succinctly put, but for the Defendant's actions in Iowa, this case would not exist. Accordingly, specific personal jurisdiction exists.

Moreover, the final two factors also weigh in favor of allowing this Court to exercise jurisdiction over the case and controversy. Certainly Iowa has an interest in allowing an Iowa company to bring forth an action seeking to pro-actively protect a product from a trademark suit, when Iowa resources were (allegedly) used to develop the product, the product would be sold in Iowa (and elsewhere) and the profits would return to Iowa.

The final factor involves convenience of the forum. In this case, there are two companies: one located in New Jersey, one in Iowa. One party will have to travel to Court. Similarly, one company's records will be in Iowa, the other's will be in New Jersey. The case is an even split. Accordingly, Iowa is as convenient as New Jersey would be for the parties. The fact that New Jersey would be more convenient for travel purposes for the Defendant is no reason

to divest this Court of jurisdiction, considering the forgoing analysis.

Accordingly, the Court is persuaded that this is no mere flow of commerce case. The Defendant has profited from selling candy in Iowa, and those sales are proportional to its candy sales in the rest of the country. The Defendant employs an Iowa based employee who does work in Iowa with Iowa retailers. And as discussed above, the Defendant sent a letter to an Iowa company in Iowa to discourage the Plaintiff from developing and selling an allegedly infringing candy. When those facts are considered under the five factor framework discussed above, it is clear that this Court has general personal jurisdiction over the Defendant. Neither due process nor traditional notions of fair play are offended by allowing this Court to exercise jurisdiction over this Defendant.

## B. First Filed Rule

The Defendant's second argument is that the Plaintiff filed this Complaint to pre-empt the Defendant's choice of forum. That is to say, the Defendant wanted to sue the Plaintiff for trademark infringement in New Jersey, but the

Plaintiff rushed into this Court to ensure a friendly forum for the developing dispute. The Defendant argues that because the Plaintiff filed suit simply to divest the Defendant of its chosen forum, the Complaint should be dismissed.

The Defendant admits that as a general principal, the first party that files a suit gets to choose from among the possible jurisdictions. The Eighth Circuit Court of Appeals has recognized the first-filed rule as follows:

> The well-established rule is that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." <u>Orthmann v. Apple River Campground Inc.</u>, 765 F.2d 119, 121 (8th Cir. 1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," <u>Orthmann</u>, 765 F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu</u>, 675 F.2d 1169, 1174 (11th Cir. 1982), the first-filed rule should apply.

<u>Med-Tec Iowa, Inc. v. Nomos Corp.</u>, 76 F. Supp. 2d 962, 967 (N.D. Iowa 1999) citing <u>Northwest Airlines, Inc. v. American Airlines, Inc.</u>, 989 F.2d 1002, 1005 (8th Cir. 1993). The first-filed rule has the benefit of being a:

> relatively firm rule that, while providing
> for the exceptional case, avoids in the
> main the need for ad hoc balancing of
> innumerable factors on a case-by-case basis
> [and therefore] is both more predictable
> for litigants-yielding more speedy, less
> expensive adjudication-and more easily
> applied by the courts-preserving scarce
> judicial resources. These are proper
> considerations that are consistent with the
> interests of justice.

Med-Tec Iowa, Inc., 76 F. Supp. 2d 962, citing Berisford Capital Corp. v. Central States, Southeast & Southwest Areas Pension Fund, 677 F. Supp. 220 (S.D.N.Y. 1988).

That said, there are exceptions to the first filed rule and the Defendant argues that the first filed rule should not apply in this case.

> The prevailing standard is that the
> first-filed rule should apply in the
> absence of compelling circumstances. See
> RK Dixon Co. v. Dealer Mktg. Servs., Inc.,
> 284 F. Supp. 2d 1204, 1213-14 (S.D. Iowa
> 2003). No firm list of what factors
> constitute compelling circumstances exists,
> but in Northwest Airlines, Inc. v. American
> Airlines, Inc., the Eighth Circuit
> identified two "red flags" that can
> potentially signal the presence of
> compelling circumstances: (1) when the
> plaintiff filing the first case had notice
> of an imminent lawsuit and (2) when the
> first-filed action seeks declaratory
> judgment. See Nw. Airlines, 989 F.2d at
> 1007. Compelling circumstances are
> generally those that tend to show that the
> first-filing party either "acted in bad

> faith [or] raced to the courthouse to
> preempt a suit by [the other party]." <u>Id.</u>

<u>Maytag Corp. v. Int'l Union, United Auto., Aerospace, & Agric.</u>
<u>Implement workers of Am.</u>, 2009 WL 350649, 6 (S.D. Iowa Feb.
11, 2009).

Numerous courts have found compelling circumstances
sufficient to overcome the first filed rule when the
first-filing plaintiff did so after being given notice that
the second-filing plaintiff was on the verge of filing a
lawsuit. See, for example, <u>Anheuser–Busch, Inc. v. Supreme</u>
<u>Int'l Corp.</u>, 167 F.3d 417, 419 (8th Cir. 1999) (finding
compelling circumstances where the defendant's letter gave the
plaintiff five days to respond to avoid a lawsuit but instead
of responding to the letter, the plaintiff filed suit); <u>ACF</u>
<u>Indus. LLC. v. Chapman</u>, 2004 WL 3178257 (E.D. Mo. Aug.26,
2004) (finding compelling circumstances where the plaintiff
filed suit the day after the defendant informed it that he
would "file in federal court" against the plaintiff).

As argued by the Defendant, the circumstances of this
case could implicate the two 'red flags' discussed above: the
Plaintiff filed suit after receiving a cease and desist letter
from the Defendant, and is arguing for declaratory relief.
See <u>Nw. Airlines</u>, 989 F.2d at 1007. However, two questions

remain for this Court.  The first is whether the mere fact that the Plaintiff seeks declaratory relief is indicative of the fact that the Plaintiff intended to inappropriately pre-empt the Defendant's suit; and, second, whether the Plaintiff suffered the threat of imminent litigation.

Considering the first fact, courts have stated that the mere fact that a first-filed action is one for declaratory relief is not sufficient; declaratory judgments present compelling circumstances only if they are "more indicative of a preemptive strike than a suit for damages or equitable relief."  Nw. Airlines, 989 F.2d at 1007.  In other words, "declaratory judgments are not to be used defensively to deny a prospective plaintiff's choice of forums." Prudential Ins. Co. Of America v. John Doe, 140 F.3d 785 at 790 (8th Cir. 1998).

As stated in Maytag Corp., 2009 WL 350649 at 7-8:

> One indication that a plaintiff is using the declaratory judgment statute for its proper purpose is whether the plaintiff encountered circumstances indicating the need for a declaratory judgment.  See, e.g., Prudential, 140 F.3d at 790 ("Insurers commonly use declaratory judgment actions to determine coverage questions, while simultaneously avoiding exposure to substantial bad faith

damages."); <u>Nw. Airlines</u>, 989 F.2d at 1007
(finding a declaratory judgment action was
necessary because the defendant's
intimation that the plaintiff was violating
the law chilled the plaintiff's recruiting
efforts); <u>Nw. Airlines, Inc. v. Filipas,
Civ.</u>, 2008 WL 1773756 (JNE/JJG)(D. Minn.
Apr. 15, 2008) (noting that since the
plaintiff's "obligations under [a] new
[benefit] plan were to begin immediately
... it was neither unseemly nor
unreasonable for [the plaintiff] to seek to
resolve the lawfulness of the new
retirement plan in the district where the
plan was negotiated and will be
implemented").

<u>Maytag Corp.</u>, 2009 WL 350649 at 7-8.

At this early stage of the case, the Court is persuaded
that the Plaintiff is using the declaratory judgement statute
for its proper purpose.  When the Plaintiff became aware of a
potential issue with the trademark of UNG, it filed a
declaratory judgment action to pro-actively ensure that the
expense of developing UNG would not go to waste.  The economy
flourishes on the backs of companies developing new products
and innovating.  If the courts denied entrepreneurs the
ability to wait until after they received notice of a
potential trademark issue to file for declaratory judgment,
the courts would burden those entrepreneurs with the
prohibitive cost of ruling out all competing trademarks before

they began research and development on new products. Such a rule would certainly have a chilling impact on many aspects of the economy. Accordingly, it appears to this Court that the Plaintiff is using its action for declaratory relief for the appropriate reason.

The next issue is whether the Plaintiff faced an imminent threat of litigation. The cease and desist letter sent by the Defendant on November 16, 2012, stated, "PIM hereby demands that Foreign Candy immediately cease and desist from any further development... of the infringing RIPS Watermelon candy... Unless we receive written confirmation by no later than November 28, 2012... PIM will have no alternative but to commence legal proceedings in order to protect its valuable trademark rights." Docket No. 14, Ex. A. Thus, it is beyond dispute that the Plaintiff knew of a potential trademark fight regarding UNG, and the Defendant had stated that it would bring suit if the Plaintiff did not cease development of UNG.

However, a mere finding that a plaintiff had "a reasonable apprehension that a controversy existed sufficient to satisfy the constitutional requirements for a declaratory judgment action, [such a finding] is not equivalent to an

imminent threat of litigation." Manuel v. Convergys Corp.,
430 F.3d 1132, 1137 (11th Cir. 2005). If such were not the
case, "'each time a party sought declaratory judgment in one
forum, a defendant filing a second suit in a forum more
favorable to [the] defendant could always prevail under the
anticipatory filing exception [to the first-filed rule].'"
Id. (quoting 800-Flowers, Inc. v. Intercont'l Florist, Inc.,
860 F. Supp. 128, 132 (S.D.N.Y. 1994)). The Court is
persuaded that the Plaintiff was not suffering an imminent
threat of litigation. As all parties are aware, cease and
desist letters are sometimes sent with no real intention to
follow through. The Plaintiff's brief characterizes this
practice as 'blowing smoke.' Docket No. 14, p. 13.
Ultimately, this Defendant did file suit in New Jersey.
However, at the time the Plaintiff filed its Complaint, all it
knew was that a potential conflict existed. The Plaintiff
sought, as any reasonable business would, to deal with the
conflict in the most direct way possible.

Under these facts, the Court is persuaded to allow the
first filed rule to operate normally. No compelling
circumstances exist requiring this Court to deviate from the

first filed rule and dismiss the Plaintiff's Complaint. Accordingly, the Defendant's second argument in its Motion to Dismiss is denied.

**V.  CONCLUSION**

For the reasons set out above, the Defendant's Motion to Dismiss is denied.

**IT IS SO ORDERED** this 20th day of June, 2013.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa